| Not For Publication |
|---|

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 08-30864 (LMW) |
| KRISTIN M. ROGERS, | ) | CHAPTER | 7 |
| DEBTOR. | ) | | |
| | ) | | |
| KRISTIN M. ROGERS, | ) | ADV. PRO. NO. | 08-3080 (LMW) |
| PLAINTIFF | ) | DOC. I.D. NO. | 1 |
| vs. | ) | | |
| JOSEPH W. CHORBA, ET AL., | ) | | |
| DEFENDANTS. | ) | | |

## APPEARANCES

| | |
|---|---|
| Majorie R. Gruszkiewicz, Esq.<br>Law Office of Ronald I. Chorches<br>449 Silas Deane Highway, 2nd Fl.<br>Wethersfield, CT 06109 | Attorney for the Plaintiff |
| Joseph J. D'Agostino, Esq.<br>1062 Barnes Road, Suite 304<br>Wallingford, CT 06492 | Attorney for the Defendant |

## MEMORANDUM AND ORDER OF PARTIAL DECISION

Lorraine Murphy Weil, Chief United States Bankruptcy Judge

This is an adversary proceeding pursuant to which the above-captioned debtor (the "Debtor') seeks a determination that a certain obligation (*i.e.,* the "Debt," as hereinafter defined) under a certain "Property Settlement Agreement" (described in more detail below, the "Agreement") with the above-captioned defendant, Joseph W. Chorba, (the "Former Spouse"), was discharged in this chapter 7 case. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334 and that certain order dated September 21, 1984 of the District Court (Daly, J.).[1]

## I. BACKGROUND

### A. The Chapter 7 Case

The Debtor commenced this chapter 7 case pursuant to a voluntary petition on March 18, 2008. (*See* Case Doc. I.D. No. 1.)[2] The Debtor received her chapter 7 discharge on June 27, 2008. (*See* Case Doc. I.D. No. 24.) Expenses of administration and allowed unsecured priority claims were paid in full in this case and a small dividend was paid to general unsecured creditors. (*See* Case Doc. I.D. No. 78.)[3]

### B. The Adversary Proceeding

The Debtor commenced this adversary proceeding by a complaint filed on June 20, 2008. (*See* A.P. Doc. I.D. No. 1, the "Complaint.") The Complaint originally named the Former Spouse and his parents (collectively, the "Parents") (*i.e.,* Marie Chorba ("Mrs. Chorba") and Elmer Chorba) as co-

---

[1] That order referred to the "Bankruptcy Judges for this District" "all cases under Title 11, U.S.C., and all proceedings arising under Title 11, U.S.C., or arising in or related to a case under Title 11, U.S.C. . . . ."

[2] Citations herein to the docket of this chapter 7 case are in the following form: "Case Doc. I.D. No. ___." Citations herein to the docket of this adversary proceeding are in the following form: "A.P. Doc. I.D. No. ___."

[3] The Defendants (as defined hereafter) did not file a proof of claim asserting a priority claim under 11 U.S.C. § 507(a)(1)(A) (*see* Claims Register) and, accordingly, no such claim (if any) was paid in this case. The court attaches no particular significance to the foregoing.

defendants. (*See id.*) The Complaint subsequently was withdrawn with prejudice as to Elmer Chorba on the grounds that he was deceased. (*See* A.P. Doc. I.D. No. 28.) The Former Spouse and Mrs. Chorba (collectively, the "Defendants") filed an answer to the Complaint on February 4, 2009. (*See* A.P. Doc. I.D. No. 21, the "Answer.") The Answer alleges an "Affirmative Defense" which seeks a determination that the Debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(15).[4]

The proceeding came on for trial on June 8, 2009. No testimonial evidence was presented at trial but a joint exhibit (*i.e.*, a copy of the Agreement) was introduced into the record (*see* Exhibit A) and attorney arguments were heard. At the conclusion of the trial the matter was taken under advisement subject to post-trial briefing (which was completed, *see* A.P. Doc. I.D. Nos. 36, 38). On November 10, 2009, the court issued an order reopening the proceeding and scheduling a status conference to consider certain allusions on the record to the fact that the Former Spouse had received a chapter 7 discharge subsequent to his entry into the Agreement and dissolution of the marriage. (*See* A.P. Doc. I.D. No. 39.) The status conference was convened on December 2, 2009 and the Debtor was ordered to file a supplemental brief (which she did, *see* A.P. Doc. I.D. No. 41.)

The proceeding now is ripe for this partial disposition and order.

## II.    FACTS[5]

---

[4]    The "Affirmative Defense" really is a counterclaim.

[5]    The facts set forth below have been gleaned from the entire record of this adversary proceeding and chapter 7 case.

The Debtor and the Former Spouse were married to each other on or about September 17, 1994. (*See* Answer ¶ 8.) The marriage ended in divorce[6] and, in connection therewith, both executed the Agreement dated June 4, 2006. (*See id.*; Exhibit A.)

Prior to initiation of the referenced divorce proceedings, the Debtor and the Former Spouse apparently borrowed $100,000.00 from the Parents (the "Parent Debt"). (*See* Exhibit A at 12.) It is alleged that the unpaid amount of the Parent Debt now is approximately $50,000.00. (*See* A.P. Doc. I.D. No. 36 at 1.)[7]

Relevant terms of the Agreement are as follows:

### 8.A. MARITAL RIGHTS

> Wife and Husband each do hereby mutually remise, release, quit-claim and forever discharge the other and the estate of such other, for all time to come, and for all purposes whatsoever, of and from any and all rights, title and interests or claims in or against the property (including income and gain from the property hereafter accruing) of the other or against the estate of such other, of whatever nature and wheresoever situate, which he or she now has or at any time hereafter may have against each other, the estate of such other or any part thereof, whether arising out of any former acts, contracts, engagements or liabilities of such other or by way of dower or curtesy, or claims in the nature of dower and curtesy or widow's or widower's rights, family exemption; or similar allowance, or under the intestate laws, or the right to take against the spouse's will; or the right to treat a lifetime conveyance by the other as testamentary, or all other rights of the surviving spouse to participate in a deceased spouses [sic] estate, whether arising under the laws (a) Pennsylvania, (b) any other State, Commonwealth or Territory of the United States, or (c) any other country, or any rights which either party may have or at any time hereafter have for past, present, and future support and maintenance, medical, hospital, dental or other expenses, alimony, alimony *pendente lite*, counsel fees, equitable distribution, costs and expenses, whether arising as a result of the marital relationship and otherwise, except and only except, all rights and agreements and obligations of whatsoever nature arising and which may arise under

---

[6] Those divorce proceedings appear to have taken place before a Pennsylvania state court (the "State Court"). (*See* Exhibit A.)

[7] It is unclear whether that amount represents the entire unpaid Parent Debt or merely the Debtor's one-half "share" of it.

this Agreement or for the breach of any provision thereof.  It is the intention of Husband and Wife to give each other, by the execution of this Agreement, full, complete and general release with respect to any and all property of any kind and nature, real, personal or mixed, which the other now owns or may hereafter acquire, except and only except, all rights and agreements and obligations of whatsoever nature arising or which may arise under this Agreement or for the breach of any provisions thereof.

    **B.**    **ALIMONY WAIVER**

The parties acknowledge that by this Agreement they have respectively secured and maintained a substantial and adequate fund with which to provide themselves sufficient financial resources for their comfort, maintenance and support . . . . Therefore, the parties hereby expressly waive, discharge and release any and all rights and claims which they may now or hereafter have by reason of the parties' marriage to alimony, alimony *pendente lite*, support and maintenance, and they further release any rights they may have to seek modification of the terms of this Agreement in a Court of Law or equity. . . .

    **C.**    **EQUITABLE DISTRIBUTION**

It is specifically understood and agreed that this Agreement constitutes an equitable distribution of property, both real and personal, which was acquired by Wife and Husband or either of them during the marriage, as by the Pennsylvania Divorce Code.

\*    \*    \*

**11. A.**    **WARRANTY AS TO EXISTING OBLIGATIONS**

Each party represents that they have not nor heretofore incurred or contracted for any debt or liability or obligation for which the other party or the estate of the other party may be responsible or liable except as may be provided for in this Agreement.  Each party agrees to indemnify and hold the other party harmless from or against any and all such debts, liabilities or litigation of every kind which may have heretofore been incurred by them, including those for necessities, except for the obligations arising out of this Agreement.

The parties agree that all marital debt, including but not limited to the $100,000.00 the parties borrowed from husband's parents [Elmer and Maria Chorba] shall be shared equally between them.

Regarding the $100,000.00 borrowed from Husband's parents, each month each party shall pay directly to husband's parents $419.00 as that party's 50% share of said debt.  These payments to husband's parents will continue until January 2020.  At that

> time the $100,000.00 debt should be paid in full. These payments shall continue until January 2020 to Marie Chorba regardless [of] whether Ms. Chorba has previously paid this debt in full. It is the intent of this paragraph to insure that the parties repay the $100,000.00 loan to Joseph Chorba's parents even if the debt was previously paid by Marie and Elmer Chorba . . . . It is the understanding of the parties that Marie Chorba needs to receive the checks in time for her to pay the home equity loan by the sixteenth of each month otherwise a later fee will be charged to Marie Chorba . . . .

(Exhibit A at 5-13).[8]

Some time in 2008, the Former Spouse commenced a case under title 11 of the United States Code in the Eastern District of Pennsylvania. (*See* A.P. Doc. I.D. No. 41, Exhibit A.) In that case the Former Spouse obtained a discharge (the "Former Spouse Discharge") under chapter 7 of the Bankruptcy Code. (*See id.*) The Debtor concedes (and, in fact relies upon the fact) that the Former Spouse Discharge discharged the Parent Debt as a personal obligation of the Former Spouse. (*See* Part VI, *infra*.)

### III.  ARGUMENTS

The Debtor argues that neither the Parent Debt nor the Debt are within the ambit of 11 U.S.C. §§ 523(a)(5) and/or 523(a)(15). The Debtor argues that the foregoing debts are not "domestic support obligation[s]" within the purview of 11 U.S.C. § 101(14A). The Debtor further argues that neither the Debt nor the Parent Debt are within the purview of Section 523(a)(15) because they do not run to the Former Spouse. The Debtor further argues that there is no applicable "hold harmless" provision in the Agreement with respect to the Debt or the Parent Debt and, in the absence thereof, neither the Debt nor

---

[8] The Debtor's obligations to the Former Spouse under the Agreement with respect to her "share" of the Parent Debt are hereinafter collectively referred to as the "Debt." The Agreement also contains express nondischargeability provisions (*see* Agreement § 13 at 14) which are unenforceable as a matter of federal law. *See Fallick v. Kehr*, 369 F.2d 899, 904 (2d Cir. 1966) ("[A]n advance agreement to waive the benefits of the [Bankruptcy] Act would be void."); *Lewis v. Trump (In re Trump)*, 309 B.R. 585, 593 (Bankr. D. Kan. 2004) ("[P]repetition agreements to waive the benefits of a bankruptcy discharge are void, and this Court is not bound by this language.").

- 6 -

the Parent Debt are within the purview of Section 523(a)(15). Finally, on grounds discussed more fully below, the Debtor argues that the Former Spouse Discharge further militates against the Defendants on the Section 523(a)(15) issue.

The Defendants appear to argue that the Debt is in the nature of "support" within the purview of Section 101(14A).[9] The Defendants further argue that, even if the Debt is not within the purview of Section 101(14A), the requisite "hold harmless" agreement is found in Paragraph 11.A. of the Agreement. (*See* Exhibit A ¶ 11.A. ("Warranty as to Existing Obligations").)

## IV.   LEGAL STANDARDS

The burden of proof (on a preponderance of the evidence standard) with respect to Sections 523(a)(5) and 523(a)(15) is on the party asserting the exception to discharge (in this case, the Defendants). *See Detels v. Nero (In re Nero),* 323 B.R. 33 (Bankr. D. Conn. 2005) (Dabrowski, J.).

### A.   11 U.S.C. § 523(a)(5)

Section 523(a) provides in relevant part as follows:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
>
> . . .
>
> (5)   for a domestic support obligation . . . .

---

[9]   That argument was not asserted in the Answer but appears to have been raised for the first time in the Defendant's [sic] Post-Hearing Brief. (*See* A.P. Doc. I.D. No. 38 at 4-5.)

11 U.S.C.A. § 523(a) (West 2010).[10]  The term "domestic support obligation" is defined in 11 U.S.C. § 101(14A) as follows:

> The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>
>   (A) owed to or recoverable by—
>
>     (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>     (ii) a governmental unit;
>
>   (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
>   (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>
>     (i) a separation agreement, divorce decree, or property settlement agreement;
>
>     (ii) an order of a court of record; or
>
>     (iii) a determination made in accordance with applicable non-bankruptcy law by a governmental unit; and

---

[10]    The foregoing is the current version (applicable to this case) of Section 523(a)(5) after its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  Prior to BAPCPA, Section 523(a)(5) in relevant part made nondischargeable debts

> to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record . . . .

11 U.S.C.A. § 523(a)(5) (West 2005) ("Old Section 523(a)(5)").  For the purpose of determining what constitutes "support" under current Section 101(14A)(B), the court concludes that cases construing the term "support" in Old Section 523(a)(5) still are apposite (subject to one possible limitation, discussed at note 11, *infra*).

>   (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C.A. § 101(14A) (West 2010).

With respect to determining whether a particular obligation constitutes "support," at least one court in this district

> analyzed certain objective "factors" [the "Factors"] traditionally utilized . . . in divining the actual nature of an obligation imposed in a divorce decree: *e.g.,* (1) the label given the obligation in the decree, (2) the form and placement of the obligation in the decree, (3) whether the obligation terminates on death, remarriage, etc., (4) the economic disparity between the parties, (5) the length of the marriage, (6) the presence of minor children, (7) the age, employability, and educational level of the parties, and (8) the financial resources, actual or potential, of each spouse.

*Nero,* 323 B.R. at 38.[11]

### B.    11 U.S.C. § 523(a)(15)

Section 523(a) provides in relevant part as follows:

A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –

. . .

> (15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.

11 U.S.C.A. § 523(a) (West 2010).

---

[11]   *Nero* specifically refers to the divorce decree. The same factors are applicable to the related agreement. Under current Section 101(14A) the mere label given in the agreement to an obligation cannot be *per se* dispositive. *See* 11 U.S.C. § 101(14A)(B) (determination to be made "without regard to whether such debt is expressly . . . designated [as alimony or support]."). The court reserves to another day the issue of whether the first Factor can be considered at all in a post-BAPCPA case. The court can take that position because, as discussed below, on this record the Defendants would not prevail under Section 101(14A) even if the first Factor is eliminated.

Prior to its amendment by BAPCPA, current Section 523(a) (the version which applies to this case) read in relevant part as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–
>
> . . .
>
> (15) not of a kind described in paragraph (5) that is incurred by the debtor in the course of a divorce . . . or in connection with a . . . divorce decree . . . unless-
>
>   (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . . ; or
>
>   (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a . . . former spouse . . . of the debtor . . . .

11 U.S.C.A. § 523(a) (West 2005, "Old Section 523(a)(15)").[12] Relevant legislative history behind Old Section 523(a)(15) states as follows:

> The exception applies only to debts incurred in a divorce or separation that are owed to a spouse or former spouse, and can be asserted only by the other party to the divorce or separation. If the debtor agrees to pay marital debts that were owed to third parties, those third parties do not have standing to assert this exception, since the obligations to them were incurred prior to the divorce or separation agreement. *It is only the obligation owed to the spouse or former spouse-an obligation to hold the spouse or former spouse harmless-which is within the scope of this section*. See In re MacDonald, 69 B.R. 259, 278 (Bankr. D.N.J. 1986).

140 Cong. Rec. H10752-01, at *H10770 (daily ed. Oct. 4, 1994) (emphasis added) (the "Legislative History").

The Legislative History explained that, when a debt was payable to a third party, it was only a "hold harmless" obligation to the spouse or former spouse with respect to that obligation that fell within

---

[12] Subsections 523(a)(15)(A) and 523(a)(15)(B) are herein collectively referred to as the "Safe Harbors."

- 10 -

the purview of Old Section 523(a)(15). Current Section 523(a)(15) specifies that the relevant debt must be "to a spouse, former spouse, or child of the debtor" and also repealed the Safe Harbors. *See* 11 U.S.C. § 523(a)(15). However, notwithstanding those changes, the Defendants do not dispute the necessity of a "hold harmless" obligation in this case. Accordingly, the court reserves for another day the issue of whether the requirement of a "hold harmless" obligation persists under current Section 523(a)(15) and will look to cases decided under Old Section 523(a)(15) for guidance.

There is disagreement among the courts as to whether the requisite "hold harmless" obligation must be expressly stated in the agreement or decree or whether it can be implied from the underlying obligation to pay the third parties. *See Pierce v. Pierce (In re Pierce),* 323 B.R. 21, 29-30 (Bankr. D. Conn. 2005) (collecting cases; decided under Old Section 523(a)(15)). In *Pierce,* this court adopted the view that the requisite "hold harmless" agreement did not have to be express but "may be implied from the underlying obligation to pay third parties," *id.* at 32. The court stands by that holding.

## V.     APPLICATION OF LAW TO FACT

### A.     11 U.S.C. § 523(a)(5)

With respect to the first Factor, the Agreement is itself denominated a "Property Settlement Agreement" and, by its own terms, "constitutes an equitable distribution of property . . . ." (Agreement § 8.C.) That Factor favors the Debtor but, for the reasons set forth above (*see* note 11, *supra*), the court will not include the first Factor in its analysis. With respect to the second Factor, the Defendants have failed to produce any evidence explaining the relevant background of the Parent Debt. Without that explanation, the court cannot apply the second Factor. With respect to the third Factor, that Factor favors the Debtor because the Debt does not terminate on the death or remarriage of the Former Spouse. With respect to the fourth Factor, the Defendants have failed to produce any relevant evidence. With

respect to the fifth Factor, given the state of the record, the length of the marriage (approximately twelve (12) years) somewhat favors the Defendants. With respect to the sixth Factor, there were two minor children of the marriage: a girl born in 1996 and a boy born in 2000. (*See* Agreement at 1; Case Doc. I.D. No. 1 (Schedule I - Current Income of Individual Debtor(s)).) The only evidence in the record with respect to the children indicates that the Debtor is the custodial parent and receives $1,000.00 per month from the Former Spouse in child support. (*See id.*; *see also* Case Doc. I.D. No. 1 (Schedules J - Current Expenditures of Individual Debtor(s)).)[13] However, without any further explanation in the record, the sixth Factor favors neither party. With respect to the seventh and eighth Factors, the court cannot apply those Factors because there is insufficient relevant evidence in the record. Based upon the foregoing, the court concludes that the Defendants have failed to satisfy the burden of proof under Section 523(a)(5).

The Defendants appear to argue that the court should nonetheless conclude that the Debt is in the nature of support because

> [a] party may chose [sic] to pay a debt and less in alimony to bring an equitable resolution to a divorce. Whether bankruptcy is contemplated at the time or not, the party receiving the payment has sacrificed or agreed to less in one payment form to bring equity to the other payment. We can not [sic] ignore that the drafters did not limit the non-dischargeable debts to alimony and child support but instead left an expansive definition of maintenance and support.

(A.P. Doc. I.D. No. 38 at 4-5.) This court rejected a materially similar argument in *Pierce* as follows:

> The Plaintiff's testimony that he paid the Debtor more alimony as a consequence of the Alleged Debt [from his former wife] is not inconsistent with the characterization of the Alleged Debt as a property settlement. That is because it is not uncommon to make a

---

[13]     The Agreement contains a waiver of alimony (*see* Agreement ¶ 8.B.). Accordingly, it is a reasonable assumption that the income referred to at item 10 of Schedule I refers to child support.

> favorable (upward) adjustment of alimony payable to a former spouse in light of a property settlement that is less favorable to that spouse.

*Id.*, 323 B.R. at 29. In any event, the referenced concerns expressed by the Defendants are addressed adequately by the Factors considered above by the court.

For the reasons set forth above, the court concludes that the Defendants have failed to prove that either the Debt or the Parent Debt is nondischargeable pursuant to Section 523(a)(5) of the Bankruptcy Code.[14]

### B.     11 U.S.C. § 523(a)(15)

The Defendants entirely rely upon the following provision of the Agreement to constitute an express "hold harmless" agreement:

> Each party represents that they have not nor heretofore incurred or contracted for any debt or liability or obligation for which the other party or the estate of the other party may be responsible or liable except as may be provided for in this Agreement. Each party agrees to indemnify and hold the other party harmless from or against any and all such debts, liabilities or litigation of every kind which may have heretofore been incurred by them, including those for necessities, except for the obligations arising out of this Agreement.

(Agreement ¶ 11.A. ("Warranty as to Existing Obligations") (the "Warranty and Hold Harmless").)

The Warranty and Hold Harmless is a warranty that each party has fully disclosed his/her existing obligations for which the other may be liable: it applies only to undisclosed obligations. Therefore, the "hold harmless" language therein also applies only to undisclosed obligations. The Parent Debt was not an undisclosed obligation; in fact, it is specifically provided for in the Agreement.

---

[14] Under other circumstances, the court might reopen the proceeding to permit the Defendants to supplement the record with respect to Section 523(a)(5). However, because the Defendants did not plead Section 523(a)(5) in the Answer, but, rather, raised it for the first time in their post-trial brief, the court declines so to reopen the proceedings.

Accordingly, the court concludes that the Warranty and Hold Harmless does not apply to either the Parent Debt or the Debt.

As this court observed after a finding of "no express hold harmless" in *Pierce*:

The court agrees with the Debtor that there is no currently effective *express* "hold harmless" provision in the Divorce Judgment with respect to the Joint Debts. However, the court adopts as the better-reasoned view the view stated in *Gibson* [*v. Gibson (In re Gibson),* 219 B.R. 195 (6th Cir. BAP 1998)] and like cases that the requisite "hold harmless" obligation need not (as a matter of federal law) be express but may be implied from the underlying obligation to pay third parties. But that is not the end of the analysis. That is because courts adopting . . . [that] view often engage in a detailed analysis of the relevant divorce decree or separation agreement and relevant state (including family) law to determine whether there is an implied "hold harmless" obligation incurred in the course of the relevant divorce or separation. *See, e.g.,* [*Ruhlen v.*] *Montgomery* [*(In re Montgomery),*], 310 B.R. [169 (Bankr. C.D. Cal. 2004)]; [*Johnston v.*] *Henson* [*(In re Henson)*], 197 B.R. [299 (Bankr. E.D. Ark. 1996)]. Accordingly, this court believes that it is appropriate to impose upon the Plaintiff (who bears the burden of proof on the relevant issue) the burden of seeking a clarification from the Family Court as to whether the Divorce Judgment impliedly requires the Debtor now to hold the Plaintiff harmless (*i.e.*, indemnify him) with respect to the Joint Debts.

*Pierce,* 323 B.R. at 32 (emphasis in original; footnote omitted). This court's concerns in the foregoing regard are intensified here because the state law to be applied appears to be Pennsylvania law. Accordingly, the court deems it appropriate to impose upon the Former Spouse the burden of seeking a clarification from the State Court as to whether the Agreement impliedly requires the Debtor now to hold the Former Spouse harmless with respect to the Debt or the Parent Debt.

## VI.   **FORMER SPOUSE DISCHARGE**

The Debtor has argued the significance of the Former Spouse Discharge as follows:

There is pre-BAPCPA case law suggesting that a right of payment to a third party may, in substance, be a right of payment to a former spouse where the effect of the discharge would be to make the former spouse liable to that third party. *See In re Gentilini*, 365 B.R. 251, 255, discussing *In re Kline*, 65 F.3d 749, 751 (8th Cir. 1995) and *In re Spong*, 661 F.2d 6, 11 (2d Cir. 1981) (holding that obligation to pay attorneys' fees is

> nondischargeable where, if the debt is discharged, the former spouse would be held liable for those fees). Two critical distinctions exist in this case: 1) only cases decided after the effective date of BAPCPA are applicable, and 2) counsel for the Defendant, Joseph Chorba, admitted at the Hearing that his client has obtained a Chapter 7 discharge, thereby extinguishing any personal liability he has on the debt to his mother.

(A.P. Doc. I.D. No. 36 at 6 n.5.) The Debtor has argued further:

> It is clear that any personal liability Mr. Chorba had for the debt owed to his mother has been extinguished. Therefore, it is disingenuous for the . . . [Former Spouse] to argue that he will have "increased liability" in the event the Plaintiff is meritorious [sic] in this proceeding.

(A.P. Doc. I.D. No. 41 at 1.)

The Debtor's stated argument is mooted by the fact that the court did not rely upon *Gentilini*, *Kline* or *Spong* on any point relevant to the above-referenced argument. In fact, below the court directs dismissal of the Affirmative Defense as to Mrs. Chorba.

The foregoing begs the question of whether the Former Spouse Discharge would have any negative effect under applicable Pennsylvania law upon accrual of rights under any applicable implied "hold harmless" agreement. Accordingly, in the event that the State Court concludes that an applicable implied "hold harmless" agreement exists, the burden is on the Debtor to seek a ruling from the State Court on the Former Spouse Discharge.

## VII. <u>MRS. CHORBA</u>

Mrs. Chorba lacks standing to assert her Section 523(a)(15) "Affirmative Defense." (*See* Answer ¶ 13.) *See* Part IV.B, *infra*. Accordingly, the Affirmative Defense (*i.e.*, counterclaim) must be dismissed as to Mrs. Chorba.

## VIII. CONCLUSION

For the reasons discussed above, the court concludes as follows: (1) neither the Debt nor the Parent Debt are within the purview of 11 U.S.C. § 523(a)(5); (2) the Agreement does not contain an express "hold harmless" agreement with respect to either the Parent Debt or the Debt; (3) it is appropriate for the Former Spouse to bear the burden to seek a clarification from the State Court as to the existence of an applicable implied "hold harmless" provision in the Agreement; (4) if the State Court concludes that such a provision exists, it is appropriate for the Debtor to bear the burden to seek a determination of the effect under Pennsylvania law of the Former Spouse Discharge on accrual of rights under such implied "hold harmless" provision; and (5) Mrs. Chorba lacks standing to assert the Affirmative Defense (*i.e.*, counterclaim) and the Affirmative Defense must be dismissed by separate order as to her. Further, a separate order shall issue scheduling an on-the-record status conference in this proceeding to discuss "next steps."

It is **SO ORDERED.**

Dated: April 19, 2010                                   BY THE COURT

*Lorraine Murphy Weil*
Lorraine Murphy Weil
Chief United States Bankruptcy Judge